# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

JESSCENIA D. PEREZ,

       Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No.  1:22-cv-00297-SAB

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

(ECF Nos. 14, 17)

## I.

## INTRODUCTION

Plaintiff Jesscenia D. Perez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's motion for summary judgment shall be denied, and Defendant's cross-motion for summary judgment shall be granted.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 7, 9, 10.)

1

## II.

## BACKGROUND[2]

Plaintiff filed the instant application for Social Security benefits under Title II on July 9, 2019, alleging disability beginning June 24, 2018.  (See Admin. Rec. ("AR") 196–202, 234, ECF Nos. 11-1, 11-2.)  Plaintiff alleges she was unable to work due to a back injury, nerve pain, depression, anxiety, post-traumatic stress disorder ("PTSD"), seizure disorder, severe allergies, a history of cerebral AV malformation, memory loss, and IBS with diarrhea.  (AR 238.)  Plaintiff's claim was initially denied on December 10, 2019, and denied upon reconsideration on March 20, 2020. (AR 126–30, 107–24.)  On November 5, 2020, Plaintiff appeared via telephonic conference, for an administrative hearing before Administrative Law Judge Dennis LeBlanc (the "ALJ").  (AR 49–87.)  Although informed of her right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative.[3]  Vocational expert ("VE") Susan Johnson and Plaintiff's father, Alonzo Perez, also testified at the hearing.  On March 9, 2021, the ALJ issued a decision denying benefits.  (AR 25–48.)  On January 7, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1–6.)

Plaintiff initiated this action in federal court on March 14, 2022, and seeks judicial review of the denial of her application for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on November 16, 2022.  (ECF No. 11.)  On March 3, 2023, Plaintiff filed a motion for summary judgment.  (ECF No. 14.)  On May 3, 2023, Defendant filed a cross-motion for summary judgment and brief in opposition to Plaintiff's motion.  (ECF No. 17.)  No reply brief was filed and the matter is deemed submitted on the pleadings.

///

///

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] Plaintiff is currently represented by attorney Jonathan Pena, of the Law Offices of Pena & Bromberg, PLC.  (See ECF No. 14.)

### III.

### LEGAL STANDARD

#### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.  Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

///

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

**B.      Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, March 9, 2021 (AR 30–43):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2022, and Plaintiff has not engaged in substantial gainful activity since June 24, 2018, the alleged onset date. (AR 30–31 (citing 20 C.F.R. §§ 404.1571 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: lumbar spondylosis, fibromyalgia, small fiber neuropathy, seizure disorders, major depressive disorder ("MDD"), generalized anxiety disorder ("GAD"), PTSD, obsessive-compulsive disorder ("OCD") agoraphobia with panic attacks, and adjustment disorder. (AR 31–32 (citing 20 C.F.R. § 404.1520(c)).)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 32–34 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526).) In reaching this determination, the ALJ considered Listings 1.04 (generally, musculoskeletal disorders), the "Neurological" listings under 11.0, and the mental impairment listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders). The ALJ also considered the paragraph B criteria and found that Plaintiff's mental impairments do not result in one extreme limitation or two marked limitations in a broad area of functioning.[7] (AR 32–34.) More specifically, the ALJ determined Plaintiff has only "mild"

---

[7] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." Id. To satisfy the paragraph B criteria, a claimant must have an "extreme"

6

limitations in the areas of "understanding, remembering or applying information," and "adapting or managing oneself," and "moderate" limitations in the areas of "interacting with others" and "concentrating, persisting, or maintaining pace." (AR 33–34.) The ALJ also considered the "paragraph C" criteria, and determined this was also not satisfied.[8] (AR 34.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform sedentary work, as defined as:

> able to lift and/or carry ten pounds occasionally and five pounds frequently, stand and/or walk two hours of an eight-hour workday, sit for six hours of an eight-hour workday, occasional climbing, stooping, kneeling, crouching, crawling; frequent reaching and handling; she needs to avoid workplace hazards, such as dangerous machinery or unprotected heights; she is able to understand, remember, carry out simple instructions in a routine and repetitive work setting involving few changes throughout the workday and no communication or interaction with the general public.

(AR 35–41 (citing 20 C.F.R. §§ 404.1529; 404.1520c; SSR 16-3p, <u>available at</u> 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (AR 41–42 (citing 20 C.F.R. § 404.1565).)

At step five, the ALJ noted Plaintiff was born on March 14, 1982, and was 36 years old (which is defined as a younger individual aged eighteen to forty-four) on the alleged disability onset date; Plaintiff has at least a high school education; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job

---

limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. <u>Id.</u> An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. <u>Id.</u> A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. <u>Id.</u> A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair." <u>Id.</u> And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited." <u>Id.</u>

[8] To satisfy the "paragraph C" criteria, there must be a medically documented history of the existence of the mental disorder in the listing category over a period of at least two years and there must be evidence of both: (1) medical treatment, mental health therapy, psychosocial support (s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) marginal adjustment, that is, minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

skills.  (AR 42 (citing 20 C.F.R. §§ 404.1563; 404.1564; SSR 82-41, available at 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as:

- Lens Inserter (Dictionary of Occupational Titles ("DOT") 713.687-026), an unskilled, sedentary work position with approximately 10,000 jobs available in the national economy;

- Patcher (DOT 723.687-010), an unskilled, sedentary work position with approximately 10,000 jobs available in the national economy; and

- Table Worker (DOT 739.687-182), an unskilled, sedentary work position with approximately 5,000 jobs available in the national economy.

(AR 42–43 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 83-11, available at 1983 WL 31252 (Jan. 1, 1983); SSR 83-12, available at 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, available at 1983 WL 31254 (Jan. 1, 1983); SSR 85-15, available at 1985 WL 56857 (Jan. 1, 1985)).)  With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT.  (Id. (citing SSR 00-4p, available at 2000 WL 1898704 (Dec. 4, 2000)).)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, from June 24, 2018 (the alleged date of onset) through March 9, 2021 (the date of decision).  (AR 43 (citing 20 C.F.R. § 404.1520(g)).)

## V.

## DISCUSSION

On appeal, Plaintiff presents two legal issues: (1) whether the ALJ properly evaluated the medical opinion evidence and (2) whether the ALJ had a duty to further develop the record.  (See ECF No. 14 at 1–2.)

### A.    Evaluation of Medical Evidence

Plaintiff argues the ALJ "improperly rejected the opinion of Dr. Portnoff and failed to include restrictions in the mental RFC consistent with the report."[9]  (ECF No. 14 at 1, 9–12.)

___

[9] The Court notes Plaintiff was assessed to have both physical and mental severe impairments by the ALJ; however,

1       1.    <u>Legal Standard</u>

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  <u>See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions)</u>, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  <u>See</u> 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually.");  <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a treating physician.  <u>Woods v. Kijakazi</u>, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical

---

Plaintiff only contests the ALJ's decision with respect to the opinion of Dr. Portnoff, the psychologist consultant.  As Dr. Portnoff's opinion pertains only to Plaintiff's mental impairments, it appears Plaintiff is only challenging the ALJ's decision with respect to her RFC determination based on the medical opinion evidence pertaining to Plaintiff's mental impairments.  Notably, in challenging the ALJ's evaluation of the medical opinion of Dr. Portnoff only, Plaintiff does not challenge the ALJ's evaluation of the other medical opinions/prior medical findings.  Nor does she challenge the ALJ's credibility determination with respect to her testimony or the laywitness testimony of her father, or the ALJ's step two and three findings regarding the severity of limitation in the broad functional categories (paragraph B and C criteria) caused by Plaintiff's impairments.  As such, challenges not raised herein are deemed waived.  <u>Lewis</u>, 236 F.3d at 517 n.13; <u>Indep. Towers of Wash. v. Wash.</u>, 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief.").

finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)–(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

### 2.   Consultant Opinion of Dr. Lance Portnoff, PhD, ABN

Dr. Portnoff performed a consultative mental evaluation of Plaintiff on November 3, 2019. (AR 928–32.) Plaintiff reported social anxiety/hypervigilance, daily uncued panic attacks, and tendencies for overreactive flight, "consistent with PTSD, except she cannot cite any abuse or trauma other than the [motor vehicle accidents]." (AR 928–29.) Plaintiff further reported depression due to her health, with vegetative symptoms (apathy) and passive suicidal ideas. (AR 929.) She denied any mania or psychiatric hospitalizations. She forgot what medications she is taking. Past medical history that Plaintiff contends contribute to her cognitive impairments include:

cerebral AVM and prior surgery, pituitary tumor with no bitemporal hemianopia, allergies, TBS-D, seizures, celiac disease, scarring in esophagus, Plaintiff's motor vehicle accidents in 2017 and 2004, and chronic insomnia/sleep dysregulation with occasional daytime incomplete visual hallucinations (side shadows).   Plaintiff was schooled in general classes throughout school, including two years of college education.  She denied any learning disabilities or ADHD.

As of the time of the consultation, Plaintiff reported she is engaged.  She has two children, ages 13 and 8.  She and her children currently live with her parents.  Plaintiff reported she does not need help with bathing, dressing, or grooming, but has inadequate motivation for them.  (AR 930.) She can manage money and prepare food for herself.  She does not travel alone.

On examination, Dr. Portnoff observed Plaintiff demonstrate adequate concentration, persistence, and pace.  He noted Plaintiff appeared casually-dressed and adequately groomed, displaying mild psychomotor discomfort but no abnormal involuntary movements, fair-to-good eye contact, and mildly reduced facial kinetics.   Plaintiff's receptive language comprehension was grossly intact; her thought process was coherent, but mildly rambling (like her speech), and appropriate to the situation; she displayed moderate, anxious depression through her speech and demeanor.  She was oriented to time and place and in touch with her immediate surroundings.  Her immediate and past memory was intact; she displayed a delayed recall with respect to recent memory.  She displayed good general knowledge but could not identify the capital of California or its current Governor.  She could not perform a basic calculation.[10]  (AR 931.)  Her concentration was intact.  She could not answer an abstract thinking question.  Dr. Portnoff found Plaintiff's social judgment was adequate, and she had adequate insight.

Dr. Portnoff diagnosed Plaintiff with major depressive disorder, single episode, mild to moderate; unspecified anxiety disorder, and obsessive-compulsive disorder.  He assessed Plaintiff with a history of OCD with some dermatillomania.  He noted Plaintiff reports a number of PTSD-like symptoms, including daily panic attacks, without clear-cut trauma or abuse history; thus, he determined "in lieu of further data, a diagnosis of UAD is warranted to designate 'PTSD-like

_____

[10] Plaintiff was asked how much change she would receive after spending one dollar for a 65-cents donut.  She responded, "I don't know."  (AR 931.)

1   disorder.' " (AR 931.)  Dr. Portnoff noted Plaintiff's reports of chronic depression with vegetative

2   symptoms and passive suicidal ideas; he opined her prognosis is "fair."

3       Based on his examination of Plaintiff, Dr. Portnoff opined Plaintiff is capable of managing

4   her own funds independently, and is able to perform simple and repetitive tasks.  (Id.)  Dr. Portnoff

5   opined Plaintiff has no limitations in her ability to accept instructions from supervisors, or to work

6   on a consistent basis without special or additional instruction due to psychiatric problems.  (AR

7   931–32.)  Dr. Portnoff opined Plaintiff has mild limitations in her ability to perform detailed and

8   complex tasks, and (from a psychological standpoint) to maintain regular attendance in the

9   workplace.  Dr. Portnoff opined Plaintiff has moderate limitations in her ability to interact with

10  coworkers and the public due to MDD/UAD/OCD, and to complete a normal workday or workweek

11  without interruptions from a psychiatric condition due to psychiatric symptoms.  (AR 932.)  Finally,

12  Dr. Portnoff opined Plaintiff has a moderate-to-markedly impaired ability to deal with the stress

13  encountered in a competitive work environment (due to MDD/OCD/UAD with daily panic attacks).

14       3.    ALJ's Evaluation of Dr. Portnoff's Opinion[11]

15       The found Dr. Portnoff's opinion to be "partially persuasive."  (AR 40.)  The ALJ explained

> The opinions of Dr. Portnoff are based upon an only one-time but
> thorough examination of the claimant and Dr. Portnoff provided a
> detailed explanation of her examination and reasons supporting her
> opinions, which typically would increase the supportability of Dr.
> Portnoff's opinions and persuasiveness.  Moreover, Dr. Portnoff's
> opinions are only partially consistent with the record as a whole,
> particularly the claimant's lack of supportive mental status
> examinations and lack of ongoing mental health specialist treatment,
> which supports the consistency of Dr. Portnoff's opinions and
> renders them partially persuasive.

22  (AR 40.)

---

[11] The Court notes that, under the applicable regulations for evaluating medical evidence, State agency medical and psychological consultants do not provide "medical opinions."  Rather, the new regulations use the term "prior administrative medical finding" to refer to findings "about a medical issue" made by the State agency medical and psychological consultants who review a claimant's medical file at the initial and reconsideration levels of the administrative process.  20 C.F.R. § 404.1513(a)(5) (listing examples of types of findings, such as the existence/severity of impairments or a claimant's RFC).  ALJs, however, must consider this evidence under the same rules that apply to "medical opinions" because these "consultants are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 404.1513a(b)(1);  see also 20 C.F.R. §§ 404.1513(a) (identifying "medical opinions" and "prior administrative medical findings" as categories of evidence an ALJ must consider), (a)(2) (defining "medical opinions").  The prior administrative medical findings of Dr. Portnoff is thus evaluated in this context.

1          4.      Analysis

2          a.      **The ALJ's Evaluation of Dr. Portnoff is Supported by Substantial Evidence**

3          Plaintiff argues the ALJ's finding that Dr. Portnoff's opinion was "partially persuasive" is

4   "entirely unclear" and made "without specific explanation of how [the ALJ] considered the

5   supportability and consistency factors. (ECF No. 14 at 10.)  The Court disagrees.

6          Notably, Plaintiff does not challenge the ALJ's summary and characterization of the

7   longitudinal medical record or his evaluation of the other medical opinions, nor does she

8   acknowledge the ALJ's other references to Dr. Portnoff's findings within the context of the

9   cumulative medical record at other points of the decision, and his comparison of those findings to

10  the other medical evidence; therefore, Plaintiff's argument, which appears limited to challenging

11  the sufficiency of the ALJ's specific discussion of Dr. Portnoff's opinion at page 40 of the record,

12  appears somewhat superficial.

13         Indeed, though not explicitly spelled out in the short paragraph rejecting Dr. Portnoff's

14  opinion (AR 40), the Court understands that the ALJ weighted the cumulative medical evidence

15  more greatly than Dr. Portnoff's as to certain functional determinations, as evidenced by the

16  extensive analysis provided in the pages prior.  (See AR 35–39, 40); Rice v. Barnhart, 384 F.3d

17  363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and

18  because it would be a needless formality to have the ALJ repeat substantially similar factual

19  analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in

20  support of both his conclusions at steps three and five.") (internal citation omitted); see also Molina

21  v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012), superseded by regulation on other grounds ("Even

22  when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's

23  path may reasonably be discerned."); Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (a

24  reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences

25  from the ALJ's opinion," provided "those inferences are there to be drawn.").  Further, the Ninth

26  Circuit does not require an ALJ to "draft dissertations when denying benefits."  Lambert v. Saul,

27  980 F.3d 1266, 1277 (9th Cir. 2020); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.

28  2005) (citing SSR 96-8p) ("[p]reparing a function-by-function analysis for medical conditions or

impairments that the ALJ found neither credible nor supported by the record is unnecessary.").

Here, as to the supportability factor, the ALJ noted Dr. Portnoff's opinion was supported by his own examination of Plaintiff, and his detailed explanation of that examination. (AR 40.) However, there is no indication that Dr. Portnoff reviewed Plaintiff's medical record prior to issuing his own opinion; thus, his evaluation was reliant on Plaintiff's own reporting of medical history and symptomology—some of which the ALJ discounted in his decision after reaching an adverse credibility determination (which Plaintiff also does not challenge). Furthermore, Dr. Portnoff's medical examination findings merely represent Plaintiff's condition on one day. This also goes to the relevance of the medical evidence. See 20 C.F.R. § 404.1520c(c)(1). In evaluating Dr. Portnoff's findings on November 3, 2019, within the context of the other medical examinations in the cumulative record, the ALJ concluded Dr. Portnoff's opinion was not entirely supported by the other medical evidence. For example, the ALJ noted Plaintiff has no history of being hospitalized for a mental impairment and she has demonstrated no suicidal or homicidal ideation throughout the alleged period of disability. (AR 38.) The ALJ also noted Plaintiff was seen for "counseling" on an approximately monthly basis through February 2019, but the record does not reflect any further significant—or regular or consistent—treatment with any mental health specialist, such as a psychiatrist, psychologist, counselor, or therapist, throughout the alleged period of disability. (Id. (citing AR 432–50, 767–68, 773–94, 1138).) Furthermore, Plaintiff's mental status examinations were "generally unremarkable, with no noted indications of significant abnormalities in mood, attention, insight, psychomotor activity, speech, concentration, recall, cognitive functioning, auditory hallucinations, visual hallucinations, suicidal ideation, or homicidal ideation." (Id. (citing AR 441–42, 790, 793, 1125–26).) The ALJ further noted "the only treatment [Plaintiff] has received [for her mental health condition] has been prescription medication for depression and anxiety from her primary care provider, which the evidence indicates has been generally effective…." (Id.) Thus, the ALJ concluded that the lack of any medical evidence of significant episodes of symptom exacerbation, symptom worsening, or episodes of crisis, despite the lack of mental health specialist care and only medications, suggested Plaintiff's symptoms were not as severe as alleged. (Id. (citing AR 459, 463, 468, 472, 476, 480, 493, 497, 501, 505, 508, 513, 517,

520, 527, 531, 535, 538, 541, 545, 551, 559, 660, 664, 668, 677, 690, 694, 698, 702, 706, 710, 714, 718, 722, 735, 739, 743, 747, 750, 755, 762, 772, 784, 788, 796, 800, 803, 812, 818, 826, 885, 989, 994, 998, 1004, 1008, 1014, 1018, 1174, 1207, 1215); see also AR 40 ("That the claimant has not received escalating treatment modalities for mental symptoms, such as increased frequency of treatment, individual therapy, group therapy, intensive psychiatric care, involuntary temporary holds, recurrent emergency room visits, lengthy inpatient hospitalizations, or relinquishment of guardianship rights to alleviate the claimant's alleged mental symptoms, suggests the claimant's symptoms are not as severe as alleged or that the conservative treatment [medications and monthly counseling until 2019] has been relatively effective at controlling her symptoms.").) The ALJ's finding that Dr. Portnoff's opinion is supported by his own examination findings but not necessarily the other examination findings in the cumulative record constitutes a sufficient explanation of the ALJ's consideration of the supportability factor and his determination that Dr. Portnoff's opinion was "partially persuasive." The medical records identified by the ALJ in support of his findings constitute substantial evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Ford, 950 F.3d at 1155; Andrews, 53 F.3d at 1041; Batson, 359 F.3d at 1195.

As to the consistency factor, the ALJ found Dr. Portnoff's opinion was "only partially consistent with the record as a whole." (AR 40.) The ALJ again noted the lack of any ongoing mental health specialist treatment, as well as the aforementioned mental status examinations, as examples of records with which Dr. Portnoff's opinion was inconsistent. (Id.) Thus, the ALJ sufficiently addressed the consistency factor.

On this record, the Court finds the ALJ reasonably interpreted the objective medical evidence and substantial evidence supports the ALJ's relevant findings. Plaintiff may disagree with the ALJ's findings, but this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation. Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); see also Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (When the evidence presented could support either affirming or reversing the Commissioner's conclusions, the court cannot substitute its own judgment for that of the Commissioner). "As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were

supported by substantial evidence." Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017). Accordingly, the Court concludes the ALJ's analysis of the supportability and consistency factors relative to Dr. Portnoff's medical opinion was appropriately considered and is based on substantial evidence from the record. See Woods, 32 F.4th at 792; Martinez V., 2021 WL 1947238, at *3; see also Ford, 950 F.3d at 1155; Tommasetti, 533 F.3d at 1041; Bayliss, 427 F.3d at 1216; Batson, 359 F.3d at 1195; Bray v. Comm'r Soc. Sec. Admin, 554 F.3d 1219, 1228 (9th Cir. 2009).

### b.  The RFC Determination is Supported by Substantial Evidence[12]

The Court notes Plaintiff also takes issue with the limitations the ALJ included in the RFC determination.  In addition to challenging the ALJ's evaluation of Dr. Portnoff's opinion, Plaintiff argues that, to the extent the ALJ accorded some weight to the opinion, he failed to explain why he did not incorporate opined limitations into the RFC.  (ECF No. 14 at 10–11.)

More specifically, Plaintiff argues the ALJ failed to incorporate into the RFC the following limitations opined by Dr. Portnoff: (1) moderate limitation in ability to interact with coworkers and the general public; (2) moderate limitation in the ability to complete a normal workday/workweek without interruptions from her condition; and (3) moderate to marked limitation in ability to deal with the stress encountered in a competitive work environment (due to MDD, OCC, UAD with daily panic attacks).  (Id. at 11.)  Plaintiff contends that, "in the absence of a meaningful explanation of his rejection of Dr. Portnoff's opinion, … the ALJ's mental RFC should have included the limitations assessed."  (Id.)  The Court finds Plaintiff's argument is unavailing.

First, the Court notes the ALJ did incorporate Dr. Portnoff's limitations into the RFC, to the extent he found Dr. Portnoff's opinions which supported those limitations to be "partially persuasive."  For example, as to the first limitation identified by Plaintiff, the ALJ included a limitation in the RFC of "no communication or interaction with the general public." (AR 35.)  The second and third limitations were addressed in the RFC by the limitations to avoid workplace

---

[12] The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be "based on all of the relevant medical and other evidence.").

hazards, such as dangerous machinery or unprotected heights; and to only perform simple instructions in a routine and repetitive work setting involving few changes throughout the workday. (Id.)  Meanwhile, having found the ALJ properly evaluated Dr. Portnoff's opinion and explained his reasons for deeming the opinion "partially persuasive," the Court concludes the ALJ was not required to include the limitations identified by Dr. Portnoff which arose from opinions that the ALJ properly rejected.  See Gardner v. Barnhart, 73 Fed. App'x 193, 196 (9th Cir. 2003) (holding limitations identified in testimony rejected by the ALJ did not need to be incorporated into the hypothetical to the VE or, ultimately, the RFC determination).  Rather, in reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. App'x. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).

Here, contrary to Plaintiff's assertion, the Court finds the ALJ's decision adequately reveals the portions of the limitations/opinion he discounted and explains his reasoning for doing so.  As to interacting with others, the ALJ explained that, while the objective medical evidence reflects Plaintiff has some difficulties with social interactions,

> [Plaintiff] reported … no problems getting along with family, friends, neighbors, or others.  (Ex. 8E/5-6).  [Plaintiff] further reported she gets along with authority figures.  (Ex. 8E/7).  The record does not reflect serious limits in cooperating with others; asking for help; handling conflicts; stating one's own point of view; initiating or sustaining conversation; understanding and responding to social cues; responding to requests, suggestions, criticism, correction, and challenges; or keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness during the alleged period of disability.  The record further does not reflect a significant history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation during the alleged period of disability.  The undersigned notes that [Plaintiff's] treatment notes do not reflect significant difficulties developing rapport with medical professionals, significantly diminished eye contact, or noted abnormal demeanor.

1    (AR 33.)  This explanation supports the ALJ's finding that Plaintiff's mental impairments would

2    limit her ability to interact with customers (strangers) at work, but that she would be able to work

3    effectively with supervisors and co-workers—individuals with whom she would develop regular

4    relationships.  The ALJ's limitation with respect to the public but not coworkers is thus adequately

5    supported.

6         As to the second and third limitations identified by Plaintiff, the Court again notes the ALJ

7    determined at steps two and three of the disability inquiry (which Plaintiff has not challenged) that

8    Plaintiff has only "mild" limitations in the areas of "understanding, remembering or applying

9    information," and "adapting or managing oneself," while she had a "moderate" limitation in the

10   area of "concentrating, persisting, or maintaining pace."  (AR 33–34.)

11        In support of these findings, the ALJ explained, Plaintiff's mental status examinations "did

12   not routinely demonstrate serious deficits or abnormalities in her memory, thought content, goal-

13   direct thought process, recall, or cognitive functioning," or "in her attention, orientation,

14   concentration, or cognitive functioning."  (AR 33.)  "[Plaintiff] also reported that she was able to

15   prepare simple meals, which supports an ability to follow, at least, simple instructions.  (Id. (citing

16   AR 273).)  "[Plaintiff] further reported that she could drive and does not like having anyone else

17   drive, which indicates she feels she is generally able to sequence multi-step activities." (Id. (citing

18   AR 274).)  The ALJ also noted this indicates Plaintiff "feels she is capable of operating a motor

19   vehicle, attending to her surroundings, and navigating simultaneously and independently."  (Id.)

20   The ALJ continued,

21            Further, the record does not reflect serious difficulties with
             understanding and learning terms, instructions, and procedures;
22           following one or two-step oral instructions to carry out a task;
             describing work activity to someone else; asking and answering
23           questions and providing explanations; recognizing a mistake and
             correcting it; identifying and solving problems; sequencing multi-
24           step activities; or using reason and judgment to make work-related
             decisions.  The undersigned also notes that [Plaintiff's] treatment
25           notes do not reflect significant noted difficulties following through
             with medical advice or a treatment regimen due to memory
26           functioning, minimal insight, or other supportive mental status
             examinations.

27

28   (AR 33.)  The ALJ continued

> The record does not reflect serious difficulties with initiating and performing a task that the person understands and knows how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; or working a full day without needing more than the allotted number or length of rest periods.  The undersigned notes that [Plaintiff's] treatment notes do not reflect significant noted difficulties with performing simple calculations, staying on task during her examinations, or maintaining a conversation with an examiner.  This finding is further supported by the state agency psychological consultants' determination[s].  (Ex. 1A; 3A).

(AR 33–34.)  Finally, the ALJ specifically and expressly addressed the purported limitation based on "panic attacks" when he explained

> Although [Plaintiff] reported frequent panic attacks the record does not reflect regular reports to her mental health specialists or frequent treatment for anxiety episodes.  The objective medical evidence and [Plaintiff's] mental health treatment do reflect that [Plaintiff] has some difficulties with social interactions and may have some problems with greater than simple instructions that would reduce her ability to perform work activities but does not reflect a significant loss of abstraction or intellectual ability, or an inability to learn new information, remember information that was known sometime in the past, interact with verbal and nonverbal communication, control her movements, or control her behavior, such that further limitations beyond those in the determined residual functional capacity would be appropriate.

(AR 38.)  Based on the foregoing, the ALJ's limitation to "simple instructions in a routine and repetitive work setting involving few changes throughout the workday" and to avoiding workplace hazards sufficiently addresses Plaintiff's impairments with respect to her ability to deal with stress at work (due to panic attacks) and "interruptions" from her condition.  Indeed, the Ninth Circuit has emphasized the relevant inquiry into the propriety of the translation of a "moderate" functional area (as in the paragraph B criteria) to a concrete RFC functional limitation is whether the RFC limitations are supported by the properly-weighted medical evidence, Stubbs-Danielson, 539 F.3d at 1173–74; thus, Ninth Circuit caselaw supports the ALJ's determination.  See, e.g., id. at 1169 (limitation to "simple, routine, repetitive" tasks accommodates medical opinions that a claimant has a "slow pace" and "several moderate limitations in other mental areas."); see also id. at 1174 (discussing how limitations regarding ability to "carry out very short simple instructions,"

"maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision" were all related to the functional area of "concentration, persistence, or pace," and these restrictions were adequately captured by RFC limitation to "simple tasks"); Rogers v. Comm'r Soc. Sec. Admin., 490 Fed. App'x. 15, 17–18  (9th Cir. 2012) (RFC assessment that claimant could perform work limited to simple routine tasks performed in unskilled work was consistent with the medical opinion that she was moderately limited in abilities to understand, remember, and carry out detailed instructions and to respond appropriately to changes in the work setting, and adequately captured all of the claimant's limitations); Thomas, 278 F.3d at 953, 955, 958 (if a job is unskilled, the tasks are very simple and may be performed by a claimant with "mild to moderate deficiencies of concentration"); Sabin v. Astrue, 337 Fed. App'x. 617, 620–21 (9th Cir. 2009) (ALJ properly assessed medical evidence when determining—despite moderate difficulties as to concentration, persistence, or pace—the claimant could perform simple tasks on a consistent basis).

Finally, the Court notes "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010); Langford v. Astrue, No. CIV S-07-0366 EFB, 2008 WL 2073951, at *3 (E.D. Cal. May 14, 2008) (finding limitations under the B and C criteria are used to rate the severity of mental impairments at steps two and three of the sequential evaluation; they are not an RFC assessment and an ALJ need not include them, verbatim, in his ultimate assessment of a claimant's RFC); see also Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot ... exact descriptions of ... limitations" to reach an RFC determination consistent with the medical record and claimant's limitations); Carver v. Colvin, 600 Fed. App'x 616, 620 (10th Cir. 2015) (finding ALJ "sufficiently captured the essence of the Section III functional limitations," despite not repeating limitations as stated in the medical opinions "verbatim," and commenting, "To conclude otherwise would parse the ALJ's language too finely."); Schneider, 433 Fed. App'x. at 509–10 (ALJ reasonably translated diagnosis that claimant "was expected to have significant difficulties in maintaining normal social interactions" due to "stress and anxiety" and adequately

addressed all limitations by issuing RFC which limited claimant to "unskilled work with no public contact and minimal social interactions with co-workers," even though it did not expressly include inability to interact with "supervisors"). This is because the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545). For this reason, as well, Plaintiff's argument that the RFC was flawed because the ALJ did not incorporate into the RFC the exact limitations identified by Dr. Portnoff is unavailing.

In sum, the Court concludes the ALJ appropriately considered the supportability and consistency factors relative to Dr. Portnoff's medical opinion, and his findings are based on substantial evidence from the record. See Woods, 32 F.4th at 792; Martinez V., 2021 WL 1947238, at *3; see also Ford, 950 F.3d at 1155; Tommasetti, 533 F.3d at 1041; Bayliss, 427 F.3d at 1216; Batson, 359 F.3d at 1195; Bray, 554 F.3d at 1228. Furthermore, the Court concludes the ALJ appropriately synthesized the supported limitations identified in Dr. Portnoff's opinion with the other medical opinions and cumulative record in reaching the RFC determination.

**B.     Duty to Further Develop the Record**

Plaintiff argues the ALJ "failed to fully and fairly develop the record and obtain an opinion from a treating or examining medical source and failed to ask legally pertinent questions of the vocational expert." (ECF No. 14 at 2, 13–14.)

1.     Legal Standard

Generally, "[t]he claimant has the burden of proving that [she] is disabled." Smolen, 80 F.3d at 1288. However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered … even when the claimant is represented by counsel.' " Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). However, "[w]hen a claimant is not represented by counsel, this responsibility is heightened." Id. This is because "Social Security proceedings are inquisitorial rather than adversarial." Schiaffino v. Saul, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting Sims v. Apfel, 530 U.S. 103, 111–12 (2000)). In particular, the ALJ's duty to develop the record fully

is heightened where the claimant may be mentally ill and thus unable to protect her own interests. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992)).

> The ALJ is not a mere umpire at such a proceeding, but has an independent duty to fully develop the record … it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. [He] must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.

Celaya, 332 F.3d at 1183 (quoting Higbee, 975 F.2d at 561).

Nevertheless, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss, 427 F.3d at 1217 (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); see also Brown v. Berryhill, 697 Fed. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record … [and] the ALJ provided specific, clear and convincing reasons for finding Brown's testimony regarding his symptom severity was not fully credible, including that Brown's testimony was inconsistent with his daily activities.").

2.    Analysis

Plaintiff's second issue appears to assert two discrete arguments: one involving the ALJ's RFC determination with respect to Plaintiff's physical impairments, the other involving the ALJ's use of the VE's testimony with respect to Plaintiff's mental impairments.  (See ECF No. 14 at 13–14.)

a.    **Duty to Develop the Record re: Plaintiff's Physical Impairments**

Turning to Plaintiff's physical impairment argument, Plaintiff appears to argue the record was not fully developed because she did not undergo an independent consultative examination and no treating doctor issued a medical statement opinion as to her physical limitations.  (See id. at 13.) Therefore, Plaintiff contends the ALJ failed to point to any evidence from a treating or examining medical professional to support his RFC assessment; rather, he was obligated to further develop the

1    record.  (Id.)  The Court finds Plaintiff's argument unavailing.

2        First, the Court notes Plaintiff's argument appears to suggest the ALJ is not permitted to

3    reach an RFC determination without a medical expert opinion setting forth specific limitations for

4    him.  Such a position is not supported in law.  Again, the RFC determination is not a medical

5    opinion; it is a legal determination expressly reserved for the Commissioner.  Vertigan, 260 F.3d

6    at 1049.  It is therefore squarely within the ALJ's province to synthesize the medical evidence,

7    resolve conflicts and ambiguities in the medical testimony, and determine credibility.  See

8    Andrews, 53 F.3d at 1039; Batson, 359 F.3d at 1195; see also Lingenfelter, 504 F.3d at 1042

9    ("When evaluating the medical opinions of treating and examining physicians, the ALJ has

10   discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and

11   to determine which reports to credit and which to reject.").  Indeed, not only does the RFC

12   determination fall exclusively under the ALJ's province; the Regulations and controlling legal

13   authorities require an ALJ to evaluate the objective medical evidence in the record.  See 20 C.F.R.

14   § 404.1520b ("After we review all of the evidence relevant to your claim, we make findings about

15   what the evidence shows.").  This necessarily includes consideration of "medical signs" (which are

16   "shown by medically acceptable diagnostic techniques") and "laboratory findings" (including

17   MRIs and x-rays).  See 20 C.F.R. §§ 404.1513(a)(1), 404.1502(c) (defining laboratory findings),

18   404.1502(g) (defining medical signs).

19       Further, courts have held the RFC does not need to precisely reflect any particular medical

20   provider's assessment, Althoff-Gromer, 2019 WL 1316710, at *13, nor does it need to include

21   limitations verbatim, Langford, 2008 WL 2073951, at *3; moreover, they indicate a medical expert

22   opinion is not required to synthesize the medical evidence in reaching the RFC determination where

23   the record is unambiguous.  See Bufkin v. Saul, 836 Fed. App'x 578, 579 (9th Cir. 2021) ("ALJs

24   need not seek the opinion of a medical expert every time they review new medical evidence and

25   make a RFC determination.").  Indeed, the regulations provide that the agency may obtain a

26   consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must

27   do so in every case.  See Corwin v. Kijakazi, No. 1:20-cv-00394-GSA, 2021 WL 5771658, at *6

28   (E.D. Cal. Dec. 6, 2021); see also 20 C.F.R. § 404.1517.  Thus, to the extent Plaintiff argues the

1    ALJ was further required to develop the record because it lacked an expert medical opinion, the

2    Court finds Plaintiff's argument is unavailing.

3          Furthermore, Plaintiff's argument that there were no medical experts providing opinions for

4    the ALJ to consider is erroneous.  The ALJ considered the prior administrative medical findings of

5    M. Amado, M.D., and E. Trias, M.D., state agency medical consultants.  (AR 41.)  As the Court

6    has noted, even though prior administrative medical findings are not "medical opinions," the ALJ

7    must consider such evidence under the same rules that apply to medical opinions because the state

8    consultants are considered highly qualified and experts in Social Security disability evaluation.  20

9    C.F.R. § 404.1513a(b)(1);  see also 20 C.F.R. § 404.1513(a).  The ALJ also considered the

10   statements of Plaintiff's treating physician Dr. Hylton, though he ultimately discounted them as

11   noted in the decision.  (See AR 41.)

12         In any event, Plaintiff's argument impermissibly attempts to shift the burden of proof to the

13   ALJ; whereas, it is the claimant's burden, not the ALJ's, to establish disability by presenting all

14   supporting evidence.  Smolen, 80 F.3d at 1288; Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007);

15   Ford, 950 F.3d at 1148.  Importantly, Plaintiff does not argue the record was ambiguous or

16   inadequate; thus, the duty to further develop the record was not triggered.  Mayes, 276 F.3d at 459–

17   60; Bayliss, 427 F.3d at 1217; Brown v. Berryhill, 697 Fed. App'x at 549.  Moreover, a showing

18   of unfairness or prejudice resulting from any failure to develop the record is required for remand,

19   Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997), and Plaintiff has not made this requisite

20   showing.

21         **b.     Duty to Develop the Record re: Plaintiff's Mental Impairments**

22         Turning to Plaintiff's mental impairment argument, Plaintiff argues the ALJ failed to

23   include the moderate limitations identified by Dr. Portnoff, including Plaintiff's panic attacks, in

24   the hypotheticals presented to the VE, and to ask the VE questions based on those limitations

25   "pertaining to reliability and tolerances of off task behavior and absenteeism in the competitive

26   workplace."  (ECF No. 14 at 14.)  Plaintiff argues the ALJ should have asked such questions on

27   Plaintiff's behalf because she was overwhelmed with the administrative process and was

28   proceeding without counsel.  (Id.)  The Court finds this argument unavailing.

Notably, this Court has determined the ALJ properly evaluated the medical opinion evidence, including Dr. Portnoff's opinions, and his finding that Dr. Portnoff's opinion was "partially persuasive" was appropriately supported by substantial evidence.  In particular, the Court noted the ALJ's express explanation for determining Plaintiff's mental impairments produced only mild limitations in the functional areas of "understanding, remembering or applying information" and "managing oneself," and his determination that the allegations of panic attacks did not support greater limitations than those assessed in the RFC.  The instant step five argument merely rehashes Plaintiff's prior arguments and therefore fails for the reasons previously articulated.  See Stubbs-Danielson, 539 F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."); see also Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE).

Finally, the Court acknowledges Plaintiff appeared at the disability hearing without representation, and the Ninth Circuit imputes a "heightened responsibility" to the ALJ under such circumstances.  See Celaya, 332 F.3d at 1183.  Nonetheless, "there is no constitutional right to representation at a Social Security hearing."  Miller v. Barnhart, 33 Fed. App'x. 914 (9th Cir. 2002).  Rather, the right to counsel at a Social Security hearing is a statutory right, which may be waived.  Graham, 129 F.3d at 1422.  Thus, to the extent Plaintiff argues the record was undeveloped solely because she appeared without an attorney, her argument is unavailing.  Furthermore, even under this heightened standard, the ALJ's handling of the record was appropriate.  The hearing transcript reflects the ALJ spent a significant amount of time at the onset of the hearing confirming that Plaintiff understood she could obtain counsel before proceeding with the hearing, explaining to Plaintiff the potential benefits of being represented by counsel, notifying Plaintiff of the resources that would assist Plaintiff in retaining representation, if she chose to do so—including attorneys who would potentially represent Plaintiff on a contingency fee basis—and offering Plaintiff the

1  option to resume the hearing after obtaining counsel.  (See AR 53–60.)  After this lengthy

2  discussion, Plaintiff indicated she understood her options and voluntarily waived her statutory right

3  to representation at the hearing.  (AR 60.)

4         Finally, again, Plaintiff has not argued the record was ambiguous or inadequate in any way.

5  On this record, the Court cannot conclude a duty to further develop the record was triggered, or that

6  the ALJ failed to perform such a duty.

7  **VI.**

8  **CONCLUSION AND ORDER**

9         For the foregoing reasons, IT IS HEREBY ORDERED that:

10    1.    Plaintiff's motion for summary judgment appealing the decision of the

11       Commissioner of Social Security (ECF No. 14) is DENIED;

12    2.    Defendant's cross-motion for summary judgment (ECF No. 17) is GRANTED; and

13    3.    The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant

14       Commissioner of Social Security and against Plaintiff Jesscenia D. Perez, and close

15       this case.

16

17  IT IS SO ORDERED.

18  Dated:   **June 14, 2023**

19                       UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

26